SLIP OPINION

Cite as 2016 Ark. App. 471

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-225

| | |
|---|---|
| JOSE TURCIOS<br><br>APPELLANT<br><br>V.<br><br>TYSON FOODS, INC., AND TYNET<br>APPELLEES | **OPINION DELIVERED** OCTOBER 19, 2016<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NOS. G309211/G402139]<br><br><br>AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

This case is on its second appeal to this court[1] and follows the January 8, 2016 decision of the Arkansas Workers' Compensation Commission (Commission) reversing in part its prior opinion from April 10, 2015, finding that appellant Jose Turcios failed to prove by a preponderance of the evidence that he is entitled to temporary total-disability benefits (TTD) from March 6, 2014, until a date yet to be determined. The only issue raised in this appeal is whether Turcios is entitled to additional TTD. We affirm.

## I. *Facts & Procedural History*

Turcios suffered medial meniscus ligament (MCL) and anterior cruciate ligament (ACL) right-knee injuries. A hearing was held on August 27, 2014, on the issue of the compensability of Turcios's ACL tear, medical treatment for that injury, and TTD from

---

[1] *See Tyson Foods, Inc. v. Turcios*, 2015 Ark. App. 647, 476 S.W.3d 177 (*Turcios I*).

March 6, 2014, to a date yet to be determined. This TTD was for the period after Turcios had been released to work at light duty. The Administrative Law Judge (ALJ) found that Turcios had failed to prove that his ACL tear was causally related to his compensable injuries; therefore, the ALJ did not address the issue of TTD. The Commission reversed the decision and determined that the ACL tear was a compensable injury and that Turcios was entitled to medical treatment as recommended by his treating physician. In addition, it found that Turcios was entitled to TTD from March 6, 2014, to a date yet to be determined.

On November 12, 2015, this court affirmed the Commission's decision to award medical treatment for Turcios's right-knee ACL injury and reversed and remanded to the Commission to make "more robust factual findings and for it to determine the applicability (or inapplicability) of Arkansas Code Annotated sections 11-9-521 [(Repl. 2012)] and 11-9-526 [(Repl. 2012)]." *Turcios I*, 2015 Ark. App. 647, at 9, 476 S.W.3d at 182. This court specifically required on remand that the Commission determine (1) whether Turcios remained in his healing period or started a new healing period; (2) whether he suffered a total incapacity to earn a meaningful wage; (3) whether Turcios "returned to work" within the meaning of section 11-9-521; (4) whether Turcios's absenteeism was related to his compensable knee injury or an unrelated medical issue; and (5) whether Turcios's alleged violations of Tyson's attendance policy did or did not affect his TTD eligibility under section 11-9-526. *Id*. While we acknowledge that "robust findings of fact" is not a legal standard, we hold that the Commission made the requested additional findings sufficient to address the merits of Turcios's argument.

In its January 8, 2016 opinion, the Commission changed its determination and found that Turcios did not prove that he was entitled to TTD after March 10, 2014. On remand, the Commission specifically found that Turcios had been returned to work with his restrictions accommodated no later than March 10, 2014. The Commission also found that Turcios refused Tyson's employment offer, which was suitable to his capacity. The Commission found that Turcios's testimony was inconsistent with the objective medical evidence in the record. Specifically, Turcios testified that he was physically unable to perform the restricted work provided by Tyson, but his treating physician, Dr. Sites, opined that Turcios "is able to work in a capacity that does not require pivoting, twisting, or turning." The Commission found that the position offered by Tyson to accommodate Turcios's restrictions did not require pivoting, twisting or turning. Citing *Robertson v. Pork Group, Inc.*, 2011 Ark. App. 448, 384 S.W.3d 639, the Commission found that Turcios was not entitled to TTD because his restrictions were being accommodated by Tyson, and he was fired for absenteeism unrelated to the injury.

## II.  *Standard of Review*

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. *Skinner v. Tango Transp., Inc.*, 2016 Ark. App. 304, ___ S.W.3d ___. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from the Commission. *See id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive

province of the Commission. *Id*. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id*. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*.

III.  *Discussion*

Turcios argues that substantial evidence does not support the decision of the Commission that he is not entitled to TTD from March 6, 2014, to a date yet to be determined. He urges that reasonable minds could not come to the Commission's decision when reviewing the medical and other evidence provided in support of a finding that he is entitled to TTD from March 6, 2014, to a date yet to be determined.

Arkansas Code Annotated section 11-9-521 provides that a claimant is entitled to TTD "during the healing period or until the employee returns to work, whichever occurs first. . . ." *Gomez v. Crossland Constr. Co., Inc.*, 2011 Ark. App. 787; *see also Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). In its first opinion, the Commission found that Turcios was entitled to TTD:

> The parties stipulated that the respondent paid temporary total disability benefits through March 5, 2014. Dr. Sites returned the claimant to sit-down work only on March 6, 2014. The claimant testified that he attempted to perform sit-down work only for the respondent, but that he suffered from pain and swelling in his injured right leg and consequently was unable to perform even sit-down work.

Because we hold that Turcios's "return to work" properly fell within the parameters of section 11-9-521, we need not address the additional findings of the Commission with respect to the denial of TTD. Section 11-9-521 provides as follows:

An employee who sustains a permanent compensable injury scheduled in this section shall receive, in addition to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first, weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule . . . .

Turcios argues that he did not return to work within the parameters of section 11-9-521. Turcios contends that, as in *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002), he made a good-faith effort to return to the workforce and found that he could not perform even the light-duty work assigned to him. He pleads that he should not be barred from TTD simply because he tried to work and was unsuccessful at that attempt. Turcios notes that he was not returned to work at full-work duty and was simply trying to work at a light-duty job on March 10, 2014, until his ACL surgery was approved.

Turcios stated that he was working at a sit-down job in the mailroom for a short period but could not elevate his foot while doing this work and therefore had severe swelling and pain. Turcios notes that the Commission cited a case in its first opinion finding him entitled to TTD, *Pyles v. Triple F. Feeds of Texas*, 270 Ark. 729, 734, 606 S.W. 2d 146, 149 (Ark. Ct. App. 1980), in which this court held that "if, during the period while the body is healing, the employee is unable to perform remunerate labor with reasonable consistency and without pain and discomfort, his temporary disability is deemed total." Turcios submits that he was also waiting on the ACL surgery and had added pain associated with that injury in addition to still being in the healing process from the MCL surgery. He, consistent with the claimant in *Pyles*, argues that he was unable to perform even the light-duty work with reasonable consistency and without pain and discomfort; therefore, he urges that his

temporary disability should be deemed total and that he did not return to work as contemplated in section 11-9-521.

We disagree and hold that there is a substantial basis for the Commission's decision that Turcios failed to prove by a preponderance of the evidence that he was entitled to TTD for the period after he had been returned to work. Turcios was returned to work within the restrictions and his capabilities communicated by his treating physician; therefore, he is not entitled to additional TTD. In our opinion related to the initial appeal in this matter, we pointed out that there are "[t]wo statutes which inform when a claimant may be disqualified from receiving TTD: Ark. Code Ann. § 11-9-521 and Ark. Code Ann. § 11-9-526." *Turcios (I)*, 2015 Ark. App. 647, at 6, 476 S.W.3d at 181. For scheduled injuries, an employee is entitled to TTD during the time he is in his healing period or until the employee returns to work, whichever occurs first. Ark. Code Ann. § 11-9-521. Further, if it is determined the employee has refused employment offered to him, suitable to his capacity, he is not entitled to TTD during the continuance of the refusal, unless the refusal is determined to be justifiable. Ark. Code Ann. § 11-9-526.

It is undisputed that Turcios was released to return to work on restricted duty, sit-down work only, as early as November 14, 2013. However, at the time, Tyson did not have work available within Turcios's restrictions. Accordingly, Turcios remained off work and received TTD for that time period. On February 26, 2014, Turcios had surgery on his right knee to repair the MCL tear. Pursuant to a return-to-work note from Dr. Sites on March 6, 2014, Turcios was again released to return to work on restricted duty, sit-down

work only, on March 10, 2014. This time, Tyson had work available for Turcios, within his restrictions, in the mail room sorting, organizing, and counting papers.

There is no dispute that Turcios was returned to work by Dr. Sites with a sit-down-job-only restriction on March 10, 2014. But Turcios did not report to work on that day; rather he called in sick. Turcios worked on March 11, 12, and 13, 2014. He called in sick again on March 14, 2014. Turcios was aware of the attendance policy, the importance of going to work, and the requirement to call in if he was not able to go to work. Turcios previously had been counseled on accumulating points regarding the attendance policy. Evidence supports that Tyson attempted to assist Turcios in avoiding dismissal due to attendance violations. He was contacted several times regarding his points in March 2014 and to find out why he was not calling in as required. Tyson even assisted Turcios in obtaining a leave of absence (due to medical issues unrelated to the compensable injury) so that he would not accumulate more attendance points.

During the period from March 10, 2014, to March 31, 2014, excluding eleven days attributed to the leave of absence obtained for Turcios, Turcios accumulated an additional twelve attendance points for absenteeism without a doctor's note to be off work and for failing to call in when he was going to be absent. The evidence indicates that Turcios just stopped going to work. Turcios went three days without calling or showing up and, pursuant to company practice, should have been terminated for that offense alone. Turcios admitted that he called in only twice over the time period of missing six days outside his leave of absence.

Similarly, in *Roark v. Pocahontas Nursing & Rehabilitation*, 95 Ark. App. 176, 235 S.W.3d 527 (2006), the employee was returned to work with light-duty restrictions. After she had returned to work, she missed a day without calling in as required by the company policy and was terminated. The court in *Roark* held that, but for her own actions, the employee would have been provided continuing light-duty work. She violated a provision of the attendance policy, which called for immediate termination, and she was terminated; therefore, she was not entitled to TTD. *Id.*; *see also Tyson Chicken, Inc. v. Witherspoon*, 2012 Ark. App. 99; *Watts v. Sears Roebuck & Co.*, 2011 Ark. App. 529, 386 S.W.3d 19; and *Mackey v. Cobb Vantress, Inc.*, 2011 Ark. App. 88.

We hold that under the same analysis utilized in *Robertson*, *Roark*, and the other previously cited cases, Turcios's entitlement to TTD ended when he was returned to work with his work restrictions accommodated with light-duty tasks. Pursuant to section 11-9-521, entitlement to TTD is ended upon a claimant's return to work or the end of his healing period, whichever comes first. Simply not having reached maximum-medical improvement, in and of itself, is insufficient to entitle Turcios to TTD. He had been returned to work, which ended his entitlement to TTD. Further, Turcios's failure to report to work and to call in as required by the company policy was a refusal of suitable employment within his capacities, and he is not entitled to additional TTD pursuant to section 11-9-526.

Turcios's reliance on *Poulan*, *supra*, to support his argument that he is entitled to additional TTD because he was not returned to full work and had not reached MMI is distinguishable. In *Poulan*, the court found the employee to be credible and the employer not credible. Here, the Commission specifically found that Turcios's testimony was not

8

credible because it was inconsistent with the objective-medical evidence in the record. Additionally, in *Poulan*, *supra*, the court found that there were conflicting medical records, some which stated the employee was released to return to work, and others which stated the employee should remain off work. The Commission in *Poulan* resolved the conflicts and determined the employee was not released to return to work; here, there is no dispute that Turcios was returned to work with his restrictions accommodated. Turcios specifically testified that the position offered was within his restrictions.

Here, the Commission found that Turcios's testimony that he could not perform the restricted work in the mailroom offered by Tyson was inconsistent with the evidence in the record. Following Turcios's return to work on March 6, 2014, he saw his primary-care physician regarding issues unrelated to his work-related injuries. The "reviewed problems" included "obesity, hypertensive disorder, hyperhidrosis, fatigue, and hyperglycemia." Turcios argued that his elevated blood pressure and blood-sugar levels were due to his knee surgery; however, medical notes indicate that Turcios reported the onset of his fatigue due to hypertension more than three months earlier, which would be prior to December 19, 2013, and prior to Turcios's knee surgery in February 2014. At Turcios's follow-up visit, Turcios again reported fatigue as his primary complaint. That assessment included hypertensive disorder; fatigue (suggested possible sleep test); upper respiratory infection; sore throat (pharyngitis); liver function tests abnormal; and hyperglycemia. Nothing from that or the previous doctor visit indicated anything associated with Turcios's work-related injury, and there is no evidence to suggest that Turcios even mentioned his knee or knee pain.

9

Because the Commission's opinion on remand displays, outlines, and explains the substantial basis for the denial of TTD sought by Turcios, we affirm.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellee.