LARRY D. VAUGHT, Judge
Tina Webb appeals the opinion of the Arkansas Workers' Compensation Commission (Commission) finding that she failed to prove that she sustained a compensable low-back injury while in the course and scope of her employment with Wal-Mart Associates, Inc. (Wal-Mart). On appeal, Webb contends that the Commission's opinion is not supported by substantial evidence. We affirm.
On November 9, 2015, Webb, a Wal-Mart department manager, was working on a ladder when she fell six feet to the floor. She suffered a significant fracture injury to her left tibia that required four surgeries. Wal-Mart accepted Webb's leg injury as compensable and paid all benefits related to the injury.
While still receiving medical treatment for her left-leg injury, Webb first sought medical treatment for low-back complaints on January 21, 2016. She sought additional medical treatment for low-back pain on January 25 and 27, 2016; July 21, 2016; and October 18, 2016. Webb eventually requested a referral to neurosurgeon Dr. Robert Abraham, who had performed L4-5 back surgery on Webb in 2013. Dr. Abraham saw Webb on December 19, 2016, and his note of that date states that she presented with low-back and left-leg pain caused by a fall off a six-foot ladder at work. He recommended an MRI, which was performed on January 20, 2017. Webb returned to Dr. Abraham on February 1, 2017, and in that report Dr. Abraham states that the MRI showed interspace narrowing with minimal post-op changes on the left side at L4-5 with what appeared to be a recurrent disc herniation. He recommended an L4-5 decompressive lumbar laminectomy.
At Wal-Mart's request, Dr. Carlos Roman of Southern Regional Anesthesiology Consultants, PLLC, performed an independent medical evaluation (IME) on Webb on February 3, 2017. Dr. Roman's IME report concluded that Webb's back "injury is not related to the fall in that she had a pre-existing condition of back pain *89 and degenerative disc disease, thus, the back surgery in 2013."
On February 16, 2017, Dr. Abraham performed an L4-5 decompressive lumbar laminectomy. The following day, Dr. Abraham opined that Webb's November 9, 2015 fall aggravated her preexisting back condition. When Webb sought additional medical treatment and temporary total-disability benefits for her low-back injury, Wal-Mart controverted her claim, contending that the low-back injury did not arise out of her November 9, 2015 fall.
At the hearing before the administrative law judge (ALJ), Webb, who was forty-eight years old at the time, testified that following her back surgery in 2013, she missed only six weeks of work and felt "wonderful." She stated that before her 2015 fall at Wal-Mart, she did not have any back discomfort or pain; she did not take any medicine or prescriptions for her back; and she did not miss any time from work because of back pain.
Webb also testified about her fall from the ladder at work, the significant injury she sustained to her left leg, and the extensive medical treatment she received for her leg injury. She stated that she first noted discomfort in her back while she was in the hospital receiving treatment for her leg. At that time, she believed the back discomfort was due to being bedbound. She said that on January 21, 2016, she turned over in bed at home and experienced "a huge pain" in her low back that made her scream and cry. She stated that she went to the emergency room that day and was eventually seen by Dr. Abraham. Webb said that Dr. Abraham performed L4-5 surgery in February 2017, and she has not been released from his care. Webb testified that the pain medication she took for her leg may have masked her back injury.
Dr. Abraham testified, via deposition, that when Webb first presented in 2016, she told him that she had been suffering low-back pain since her November 2015 fall. Based on that history, it was his opinion that the fall aggravated her preexisting low-back injury and caused a recurrent disc herniation. When advised that Webb's low-back complaints did not arise until three months after the fall, Dr. Abraham testified that he could not state when the recurrent disc herniation occurred. However, he stated that it was his opinion that because Webb had very few low-back symptoms prior to November 2015 and the fall from the ladder involved significant force, the recurrent disc herniation at L4-5 was more likely than not caused by the fall rather than simply turning over in bed.
The ALJ issued an opinion on October 10, 2017, finding that Webb suffered a compensable aggravation of a preexisting low-back injury as a result of the November 9, 2015 fall while working for Wal-Mart. Wal-Mart appealed, and on April 24, 2018, the Commission reversed the ALJ's decision, finding that Webb did not sustain a low-back injury when she fell from the ladder on November 9, 2015. The Commission found that Webb suffered from a preexisting low-back injury; there were no reports of a low-back injury immediately following her fall or for three months thereafter; when she initially reported her back complaints, she did not relate them to the November fall; she inaccurately reported to Dr. Abraham that she had been suffering from low-back pain since she fell, and thus, she lacked credibility; Dr. Abraham's opinion was based on Webb's inaccurate history and was entitled to no credit; and the IME finding that the back injury was not related to the November 2015 fall was credible. This appeal, challenging the sufficiency of the evidence supporting the Commission's opinion, followed.
*90 In appeals involving claims for workers' compensation, our court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Grothaus v. Vista Health, L.L.C. , 2011 Ark. App. 130, at 6, 382 S.W.3d 1, 5. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. Id. , 382 S.W.3d at 5. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. Id. at 6-7, 382 S.W.3d at 5. When the Commission denies a claim because of the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. Id. at 7, 382 S.W.3d at 5.
An employer takes an employee as the employer finds him or her, and employment circumstances that aggravate preexisting conditions are compensable. Id. , 382 S.W.3d at 5. An aggravation of a preexisting noncompensable condition by a compensable injury itself is compensable. Id. , 382 S.W.3d at 5. An aggravation, being a new injury with an independent cause, must meet the requirements for a compensable injury. Id. , 382 S.W.3d at 5. Arkansas Code Annotated section 11-9-102(4)(A)(i) (Repl. 2012) defines a compensable injury as "[a]n accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death."
In this case, the Commission was asked to determine whether Webb's low-back injury was an accidental injury that arose out of and in the course of her employment. Whether a causal connection between employment and an injury exists is a question of fact for the Commission to determine. Smith v. Sw. Ark. Food Bank , 2011 Ark. App. 181, at 8, 381 S.W.3d 889, 894.
Webb argues on appeal that the Commission's opinion-that her low-back injury did not arise out of her November 9, 2015 fall off a ladder-is not supported by substantial evidence. She admits that she had L4-5 surgery in 2013, but she states that she felt "wonderful" after that surgery, she was able to work, and she did not have back pain or problems leading up to her 2015 fall. She concedes that she did not experience or report back pain immediately following her fall and that she first reported back pain seventy-three days later. But she argues that when she sought medical treatment for low-back pain on January 27, 2016, she reported that it was caused by her fall off the ladder. She also contends that her back pain may have been masked by the prescription medications she was taking for her leg injury.
Webb also calls into question the IME report because the doctor who authored it is an anesthesiologist, he did not review any of the records regarding her recent back injury, and he was not aware that an aggravation of a preexisting injury could be a compensable injury. Webb contends that her treating neurosurgeon, Dr. Abraham, opined that her fall from the ladder more likely than not aggravated her preexisting back condition, that the Commission improperly discounted the opinion because it was based on Webb's history that she had been suffering from back pain since the fall, and that his opinion is entitled to more weight than that of the IME doctor. Finally, she argues that her back injury arose soon after the fall and is logically attributable to it with nothing to suggest any other reasonable explanation.
*91 Our holding in Smith v. Commercial Metals Co. , 2011 Ark. App. 218, 382 S.W.3d 764 is instructive. In Smith , the appellant sought to prove that he suffered a compensable back injury following a fall or strenuous activity at work. The evidence in that case demonstrated that the appellant suffered from prior back problems; when he first sought medical treatment for his back he did not relate his complaints to his work or a work injury; he gave inconsistent accounts of whether, how, and when he hurt his back at work; MRI testing showed objective findings of a disc herniation; and his doctor opined, based partly on the appellant's history, that the back injury was the result of a trip and fall at work. Smith , 2011 Ark. App. 218, at 2-7, 382 S.W.3d at 765-68. The ALJ found that the appellant failed to prove that his spinal abnormalities were causally related to a fall or were a result of strenuous activities at work. Id. at 7, 382 S.W.3d at 768. The Commission affirmed and adopted the ALJ's opinion. Id. at 8, 382 S.W.3d at 768.
On appeal, we affirmed the Commission's finding that the appellant's symptoms-that began six weeks after his fall-were not causally connected or logically attributable to his work. Substantial evidence demonstrated different accounts of when and how his symptoms began and contemporaneous medical records contained no mention of the appellant's having suffered a work-related injury. Given the inconsistencies, we held that the Commission was entitled to find that the appellant's recollection was not trustworthy and that his doctor's opinion, based on the appellant's inaccurate statements, was entitled to no weight. Id. at 11-12, 382 S.W.3d at 770. Accordingly, we held that given the lapse of time between the appellant's fall and the manifestation of his symptoms, reasonable persons might disagree about the causal connection between the appellant's accident and his disability. Id. at 12, 382 S.W.3d at 770.
In the case at bar, the Commission likewise found that Webb failed to prove a causal connection between her fall from the ladder and her back injury, and we hold that substantial evidence supports the Commission's decision. None of the many medical records contemporaneous to Webb's November 9, 2015 fall include complaints of back pain. Webb's first low-back complaints began three months after her fall, and she first sought treatment for her back pain seventy-three days after the fall. Given the lapse of time between Webb's fall and the manifestation of her symptoms, reasonable persons might disagree about the causal connection between her accident at work and her low-back injury. Smith , 2011 Ark. App. 218, at 12, 382 S.W.3d at 770.
Additionally, the evidence is undisputed that Webb suffered from a preexisting low-back condition for which she had surgery in 2013. There is evidence that this preexisting condition caused Webb to question whether it (her preexisting condition) or the fall was the cause of her new back complaints. When Webb did seek treatment for back pain, she did not report that the pain was caused by her fall at work. For example, the January 21, 2016 medical report states that there was "[n]o mechanism of injury ... [g]radual onset of symptoms, 2 days." The January 25, 2016 report states that the "[p]atient denies any recent injury or trauma to back at L4-L5." The January 27, 2016 report refers to Webb's fall from the ladder but states that Webb's chronic back pain "has been worse since Wednesday." Moreover, at the hearing, Webb testified that when she first saw Dr. Abraham, she told him, "I'm not positive if [the back pain] occurred from my fall."
*92 Webb claimed that she had no problems following surgery; however, the Commission did not have to believe her testimony. The Commission expressly found that Webb lacked credibility because she inaccurately reported to Dr. Abraham that she had been suffering from low-back pain since her fall. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. Id. at 8-9, 382 S.W.3d at 769. The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. Flynn v. J.B. Hunt Transp. , 2012 Ark. App. 111, at 9, 389 S.W.3d 67, 71. Because Dr. Abraham's causation opinion was based on Webb's inaccurate history, the Commission afforded no weight to his opinion. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. Smith , 2011 Ark. App. 218, at 13, 382 S.W.3d at 771.
Finally, in this case, the Commission afforded more weight to the opinion in the IME report than to Dr. Abraham's opinion. We acknowledge that the physician who authored the IME report is from an anesthesiology consultant company, that he devoted just one paragraph of his report to Webb's back injury, and that he did not review Webb's recent low-back medical records. However, a finding of causation in a workers'-compensation case does not need to be expressed in terms of a reasonable medical certainty when there is supplemental evidence to support the causal connection. Heptinstall v. Asplundh Tree Expert Co. , 84 Ark. App. 215, 222, 137 S.W.3d 421, 425 (2003) (citing Osmose Wood Preserving v. Jones , 40 Ark. App. 190, 193, 843 S.W.2d 875, 877 (1992) ; see also Sneed v. Colson Corp. , 254 Ark. 1048, 497 S.W.2d 673 (1973) (holding medical evidence is not necessary in establishing a causal connection) ). As set forth above, the Commission made multiple non-medical-related findings in support of its conclusion that there was no causal connection between Webb's fall and her back injury.
On the facts presented at the hearing in this case, our court could have found that Webb's low-back injury was caused by the six-foot fall from a ladder on which she was working at Wal-Mart, but whether there is a causal connection between employment and an injury is a question of fact for the Commission to determine. Smith , 2011 Ark. App. 181, at 8, 381 S.W.3d at 894. Pursuant to our standard of review, we are not to determine whether we might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, we must affirm. Here, substantial evidence supports the Commission's decision that Webb failed to meet her burden of proving that her back injury arose out of and in the course of her employment. Accordingly, we must affirm.
Affirmed.
Whiteaker and Murphy, JJ., agree.